IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOEL H. WHITE,<br><br>               Plaintiff,<br><br>    v.<br><br>COUNTY OF HAWAII; LEVON STEVENS; KUILEE DELA CRUZ,<br><br>               Defendants. | CIV. NO. 21-00264 JMS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 96 |

**<u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 96</u>**

**I.  <u>INTRODUCTION</u>**

Defendants County of Hawaii ("the County"); Levon Stevens ("Officer Stevens") in his official and individual capacities; and Kuilee Dela Cruz ("Officer Dela Cruz") in his official capacity (collectively, "Defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("the Motion") on remaining claims against them in this action brought by Plaintiff Joel H. White ("Plaintiff" or "White"). *See* ECF No. 96. Having fully analyzed the briefing and record, and deciding the matter without a hearing under Local Rule 7.1(c), the court GRANTS the Motion.

Plaintiff has failed to meet his burden at summary judgment to produce admissible evidence establishing a genuine issue of material fact as to his remaining claims. And even excusing that procedural failure, Plaintiff's remaining federal claims for false arrest based on judicial deception necessarily fail because it is clear as a matter of law that probable cause to arrest and detain Plaintiff would easily have existed even if Defendants had included information about Plaintiff's ankle monitoring bracelet in the probable-cause application. That is, even assuming Defendants should have included information regarding the ankle bracelet, the omission was not material. *See, e.g.*, *Ewing v. Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) ("If a party makes a substantial showing of deception, the court must determine the materiality of the allegedly false statements or omissions.") (citations omitted). Given that conclusion, Plaintiff's remaining state law claims also necessarily fail.

## II. **DISCUSSION**

The parties know the facts and evidence in the record; it is not necessary for the court to set forth the entire background here. Rather, the court discusses the allegations and evidence only as necessary to rule on the Motion, and to put the court's rulings in proper context.

This case is based on allegations that Defendants wrongfully arrested and detained Plaintiff for criminal sexual assault charges in state court by obtaining

a judicial determination of probable cause without disclosing to the state judge that Plaintiff, at the time of the alleged sexual assault, was wearing an ankle bracelet to monitor his location while he was on pre-trial release for unrelated attempted murder and burglary charges. *See generally* ECF No. 1 at PageID.2–4.

**A.     The Remaining Claims**

The only claims remaining are against Officer Stevens in his individual capacity. The court's prior Order of October 1, 2021, dismissed (without opposition) any federal claims based on violations of the Fifth Amendment, and dismissed state law claims against the County of Hawaii for failure to fulfill requirements of Hawaii Revised Statutes ("HRS") § 46-72 and County of Hawaii Charter § 13-8. *See* ECF No. 23 at PageID.117. During that proceeding, Plaintiff clarified that, as to Officer Dela Cruz, he is making only official capacity claims (not individual capacity claims). *Id.* at PageID.113 n.1; *see also* ECF No. 22.

And in his Opposition to the present Motion, Plaintiff forthrightly concedes that the court should grant summary judgment against him as to: (1) Plaintiff's § 1983 claims based on an alleged withholding of exculpatory evidence (i.e., a claim based on *Brady v. Maryland*, 373 U.S. 83 (1963), or *Baker v. McCollan*, 443 U.S. 137 (1979)), *see* ECF No. 110 at PageID.562, 564; (2) Plaintiff's remaining claims against Officers Stevens and Dela Cruz in their

official capacities, *see id.* at PageID.565; and (3) Plaintiff's § 1983 *Monell* claim[1] against the County of Hawaii, *see id.* Given those concessions and the Order of October 1, 2021, the only remaining claims are against Officer Stevens in his individual capacity.

## B. Officer Stevens Has Met His Initial Summary Judgment Burden

Plaintiff thus now focuses on his individual-capacity § 1983 claim against Officer Stevens under a theory of false arrest based on judicial deception.[2] "To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.'" *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011)) (quoting *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004)). Under this theory, "[a] plaintiff must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (internal quotation

---

[1] *See Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978) (requiring a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "custom" or "policy" that caused plaintiff's injury).

[2] The remaining state law claims against Officer Stevens also rely on the same alleged lack of probable cause that forms the basis of the federal false arrest § 1983 claim. *See* ECF No. 1 at PageID.10–14.

marks omitted).  "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause."  *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978)).  "Nor may a claim of judicial deception be based on an officer's erroneous assumptions about the evidence he has received."  *Id.* (citing *Smith*, 588 F.2d at 739–40).  Applying those standards, Plaintiff argues that Officer Stevens intentionally or recklessly kept information regarding Plaintiff's ankle monitoring bracelet from Hawaii State District Judge M. Kanani Laubach ("Judge Laubach") who made the judicial finding of probable cause after issuing the arrest warrant.  ECF No. 110 at PageID.563.

        Defendants' Motion demonstrates that ample evidence was provided to Judge Laubach to establish probable cause (although with no mention of an ankle bracelet).  It is undisputed that the alleged victim of the sexual assault ("E.S.") had reported to County of Hawaii police that she had been beaten, kidnapped and tortured on or about May 29 through May 31, 2019, allegedly by Joanna Kawelo, Kahiwaokalani Hodson, and Misty Kamelamela, *see, e.g.*, ECF No. 97-19 at PageID.490–91; ECF No. 97-20 at PageID.500–02; ECF No. 97-21 at PageID.506, and during that captivity was sexually assaulted by White.

5

Photographic evidence of her and the premises corroborated her statements, at least as to the kidnapping and beating.[3]  *See* ECF Nos. 97-4 and 97-5.

Specifically as to White, it is undisputed that E.S. told the police on May 31, 2019, that during her captivity she was sexually assaulted by White sometime in the evening of May 29, 2019, when White "entered the dog kennel where [E.S.] was located," and "laid on top of her while her back was on the ground."  ECF No. 97-19 at PageID.490.  She told police that, after she told White to stop, he "held her down by placing his hand on her chest and penetrated her vaginally with his penis."  *Id.* at PageID.491; *see also* ECF No. 97-20 at PageID.501; ECF No. 97-21 at PageID.505.  It is undisputed that E.S. told the police that she knew Mr. White because he was an acquaintance.  ECF No. 97-20 at PageID.501; ECF No. 97-19 at PageID.497.  And it is undisputed that E.S. positively identified White in a photographic lineup as the person who sexually assaulted her.  *See* ECF No. 97-19 at PageID.493; ECF No. 97-21 at PageID.506.

Based on those statements by E.S., on June 6, 2019, Officer Stevens obtained from Judge Laubach a warrant for arrest of White.  ECF No. 97-19 at PageID.494; ECF No. 97-8 at PageID.396–97.  And, after Officer Dela Cruz

---

[3] Hodson, Kawelo, and Kamelamela were each indicted in state court for, among other offenses, kidnapping, terroristic threatening, and accomplice to sexual assault.  *See* ECF Nos. 97-9, 97-10, and 97-11.  They each pled guilty to certain of those offenses.  *See* ECF No. 97-22 at PageID.512–14.

arrested White on June 7, 2019, Judge Laubach issued a judicial determination of probable cause on June 8, 2019, pursuant to HRS § 803-9(5).  ECF No. 97-15 at PageID.463–64.  This determination of probable cause was based on an application approved by Officer Stevens after being prepared by arresting Officer Dela Cruz.  *Id.* at PageID.461–62.  The judicial finding of probable cause was based on a sworn declaration from Officer Dela Cruz attesting that "[E.S.] positively identified [White] as the person who sexually assaulted her by holding her down by placing his hand on her chest and inserting his penis into her vagina while she was being held captive in a dog kennel, tortured, and threatened by [Kawelo] and [Hodson]."  *Id.* at PageID.461.  The declaration also stated that "[p]ositive ID was made through photo lineup," and that "[Officer Stevens] contacted [a deputy prosecuting attorney] who advised to charge WHITE with [kidnapping and sexual assault]."  *Id.*  A prosecutor subsequently charged White on June 10, 2019, with kidnapping and sexual assault.  ECF No. 97-12.  The prosecutor then filed a motion for nolle prosequi without prejudice on June 13, 2019, ECF No. 97-13, and later filed a written motion to dismiss, ECF No. 97-22 at PageID.511.

       At the time of the alleged sexual assault, White was on bail—with electronic monitoring—for pending unrelated charges against him for attempted murder and burglary.  ECF No. 97-16 at PageID.475; ECF No. 97-17 at PageID.482–83.  White's Complaint alleges that the electronic monitoring

7

exonerated him, ECF No. 1 at PageID.5, that Defendants knew or should have known that electronic monitoring records would have shown that White was at home in Kamuela (some 73 miles away) when the sexual assault allegedly occurred, and yet Defendants did not inform Judge Laubach of the electronic monitoring bracelet when obtaining the probable cause determination. *See id.* at PageID.5–7.[4]

        In Defendants' Motion, Officer Stevens attests that at the time he obtained the arrest warrant on June 6, 2019, he was unaware that White was being electronically monitored. ECF No. 97-19 at PageID.494, 497. He also attests that it was only after White's arrest that he saw in the interview room that White was wearing a monitoring bracelet on his ankle. *Id.* at PageID.495. Officer Stevens explains that he informed the deputy prosecutor that White was wearing a monitoring bracelet, that they discussed ways a bracelet could be circumvented, and that the prosecutor advised him to proceed with charging White. *Id.* at PageID.496. The prosecutor's declaration confirms that she discussed with Officer Stevens "ways in which the electronic monitoring could be circumvented," ECF No. 97-22 at PageID.510, but proceeded with charging White because she

---

[4] Defendants point out that, although Officer Dela Cruz's declaration did not mention an ankle bracelet, at a subsequent bail hearing on June 10, 2019, a state judge (although not Judge Laubach) was aware—when the parties were discussing the existence of a judicial determination of probable cause—that White had been on electronic monitoring. ECF No. 97-17 at PageID.483.

"believed probable cause existed to arrest and charge Mr. White for the offenses of Kidnapping and Sexual Assault . . . [and] did not believe that the presence of the electronic monitoring device negated the probable cause which existed to arrest and charge Mr. White." *Id.*

Defendants' Motion also includes a declaration from George B. Drake, who Defendants proffer as an expert in the field of electronic monitoring procedures, technologies, and capabilities. ECF No. 97-24. Among other opinions, Drake states that the 2019 electronic monitoring records for White "show a series of events that are consistent with the records of individuals who have intentionally tampered with a monitoring unit's power supply in order to remove an ankle bracelet without detection." *Id.* at PageID.528. Summarizing, Drake opines that "[t]here is significant evidence that Mr. White removed his ankle bracelet to defeat his house arrest conditions." *Id.* at PageID.530.

C.  **Defendants Are Entitled to Summary Judgment**

Given this evidence of probable cause, Defendants have met their initial burden at summary judgment to show that Plaintiff "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *G & G Closed Cir. Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000)). That is, Defendants have carried their preliminary burden of

demonstrating the absence of a genuine issue of fact for trial, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), which Rule 56 allows them to do with affirmative evidence or by simply pointing out "that there is an absence of evidence to support the nonmoving party's case," *id.* at 325; *see also, e.g.*, *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (holding that the "[initial] burden may be met by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" (quoting *Celotex*, 477 U.S. at 325)).

"Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting former Rule 56(e)); *see also, e.g.*, *G & G Closed Cir. Events*, 45 F.4th at 1115 (reiterating that, if the initial burden is met, "the nonmoving party then has the burden 'to produce evidence to support its claim.'") (quoting *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03). "Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or 'metaphysical doubt' about a material issue of fact precludes summary judgment." *Leialoha v. MacDonald*, 2008 WL 2736020, at *3 (D. Haw. July 11, 2008) (citing *Celotex,* 477 U.S. 323;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); & *Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987)).

Plaintiff has failed to meet his corresponding burden at summary judgment to come forward with admissible evidence of "a substantial showing [by Officer Stevens] of deliberate falsehood or reckless disregard for the truth," and that "but for the dishonesty, the challenged action would not have occurred." *Butler*, 281 F.3d at 1024. He has no evidence that Officer Stevens—or even Officer Dela Cruz—"deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Smith*, 640 F.3d at 937. Indeed, although he *argues* that Officer Stevens is not credible, ECF No. 110 at PageID.560, he has no admissible evidence at all. *See, e.g.*, *Sevcik v. Unlimited Const. Servs., Inc.*, 462 F. Supp. 2d 1140, 1144 n.4 (D. Haw. 2006) ("[l]egal memoranda and oral argument are not evidence and do not create issues of fact.") (citing *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978)); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) ("Only admissible evidence may be considered in deciding a motion for summary judgment."); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (same). Plaintiff "may not simply rest on the hope of discrediting movant's evidence at trial," *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608

(9th Cir. 1985), but "must affirmatively show that a material issue of fact remains in dispute," *id.* (citations omitted).

Rather, Plaintiff attaches an unauthenticated exhibit implying that Officer Stevens knew or should have known that White was wearing an ankle bracelet because Officer Stevens was supposedly "the lead investigator," ECF No. 110 at PageID.560, for the pending attempted murder and assault case against White, *see* ECF No. 111-5. Similarly, he proffers an unauthenticated document to argue—contrary to Drake's opinion—that White's ankle bracelet had not been tampered with, *see* ECF No. 111-2. But the Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr*, 285 F.3d at 773 (citations omitted). And Plaintiff has produced no evidence—even crediting the unauthenticated exhibits—that monitoring data actually exonerated him, much less *any* evidence that Officer Stevens knew of such data.

In any event, even if there were a disputed factual question about whether Officer Stevens deliberately or recklessly made false statements or omissions to Judge Laubach (by failing to include information about the ankle bracelet), the next step in the analysis is to determine whether the false statements or omissions were material. *See Ewing*, 588 F.3d at 1224 ("If a party makes a substantial showing of deception, the court must determine the materiality of the

allegedly false statements or omissions."). Materiality is a threshold question for the court to address—not a question for a jury or factfinder. *See KRL*, 384 F.3d at 1117 ("The court determines the materiality of alleged false statements or omissions."); *Butler*, 281 F.3d at 1024 ("Materiality is for the court, state of mind [of the officer] is for the jury."). *See also Smith*, 640 F.3d at 937 ("The materiality element—a question for the court—. . . requires the plaintiff to demonstrate that 'the [judge] would not have issued the warrant with false information redacted or omitted information restored.'") (quoting *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997)). "This rule conserves judicial resources by allowing trials (or *Franks* hearings in the criminal context) only where the officer's behavior has an effect on the ultimate issue—would the warrant still have been issued." *Hervey v. Estes*, 65 F.3d 784, 789–90 (9th Cir. 1995).

And the court easily concludes that even if the declaration submitted to Judge Laubach had included information that White was wearing an ankle monitoring bracelet, probable cause still would have existed to arrest and detain White. That is, in context, the omitted information was not material to a finding of probable cause in this particular case.

As documented by Defendants, the complaining victim, E.S., had made specific statements to police that clearly identified White as a perpetrator. Her description of the kidnapping was corroborated by photographic evidence.

13

She explained the alleged sexual assault in graphic detail and had pointed White out in a photographic lineup. As Defendants argue, a judicial officer could have thought that the ankle monitoring bracelet might have provided an alibi as to the crime, but probable cause still would have existed as to accusations against White. *See, e.g.*, *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Probable cause 'is not a high bar.'") (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). "As [the Supreme Court has] explained, 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.'" *Wesby*, 138 S. Ct. at 588 (quoting *Gates*, 462 U.S. at 243 n.13).

In short, because probable cause to arrest and detain White existed—and would have existed even assuming Defendants had told Judge Laubach that White was wearing a monitoring bracelet—Plaintiff's § 1983 claim necessarily fails. *See, e.g.*, *Smith*, 640 F.3d at 938 (upholding a grant of summary judgment where "even if [defendant] falsified and omitted this information . . . the corrected report and warrant application would still have contained facts sufficient to establish probable cause to arrest [plaintiff] for arson"). It follows that Plaintiff's

state law claims—which Plaintiff admits are all dependent on a lack of probable cause, *see* ECF No. 110 at PageID.565–66—necessarily fail as well.

    Furthermore, given that there was no constitutional violation, Officer Stevens is necessarily also entitled to qualified immunity. "[State] officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 138 S. Ct. at 589 (citation omitted). Even assuming that existing law was "clearly established," Officer Stevens meets this test because there was no violation of a federal statutory or constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that lower courts have discretion to decide which of the two prongs of the qualified-immunity analysis to apply first).

///

///

///

///

///

///

///

///

## III. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 96, is GRANTED.  The Clerk of Court shall close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 12, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*White v. County of Hawaii, et al.*, Civ. No. 21-00264 JMS-RT, Order Granting Defendants' Motion for Summary Judgment, ECF No. 96